## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DARREL JONES**                                    **CIVIL ACTION**

**VERSUS**                                          **NO. 08-1585**

**N. BURL CAIN**                                    **SECTION "S"(2)**


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

    The petitioner, Darrel Jones, is incarcerated in the Louisiana State Penitentiary in

Angola, Louisiana.[2]  On December 4, 2003, Jones was indicted in Jefferson Parish for

the second degree murder of Jason Sanxton.[3]  The Louisiana Fifth Circuit Court of

Appeal summarized the facts of the case as follows:

> On April 17, 2003, Sergeant Dennis Thornton of the Jefferson Parish
> Sheriff's Office responded to a call on Eisenhower Street in Metairie and
> found the victim, Jason Sanxton, dead with multiple gunshot wounds.  The
> victim had a knife in his waistband and at least four gunshot wounds to his
> face.  At the scene, Sergeant Thornton found seven .380 semi-automatic
> spent casings and one projectile near the victim's body.  After analysis, it
> was determined that these projectiles were used to kill the victim.  After
> conducting interviews, defendant and Nolan Kirton were identified and
> arrest warrants were prepared.   Sergeant Thornton later received
> information about an object on Kirton's roof and used a helicopter to fly
> over it.  After the pilot observed a white object, Sergeant Thornton applied
> for and executed a search warrant to retrieve what was later identified as a
> .380 semi-automatic pistol wrapped in a white dish towel.
>     According to a witness, Grady Samuels, on April 17, 2003, he was
> walking to his home on Eisenhower Street and noticed defendant in the
> alley talking to Jason Sanxton.  Defendant told Samuels to keep walking,
> because he was handling some business.  Samuels kept walking and as he
> did, he heard gunshots.  Thereafter, he walked back and observed defendant
> jump into the passenger's seat of a car driven by Kirton, someone Samuels
> had known for a long time.  Samuels testified that he did not see either
> defendant or Sanxton with a weapon, but heard them arguing.
>     Another witness, Gerry Jones, testified that, on the same evening, he
> was smoking in his backyard on Eisenhower Street.  He stated that about
> a block away, two individuals were in the alley when one of them started

_____

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 4, Indictment, 12/4/03.

2

shooting.  He observed the shooter waving his hands before shooting the victim in the head.  After the initial shot, he heard about five or six more.  According to Jones's testimony at trial, it did not appear to him that the two individuals were arguing.

Kirton testified that he was living on Eisenhower Street at the time of the incident.  He stated that he had known the victim, Jason Sanxton, for over ten years.  Kirton denied giving defendant, Jones, a ride from the murder scene.  Kirton testified that on April 17, 2003, he first met up with the defendant at a Mid-City recording studio, and thereafter, he spent the night at defendant's house on the west bank.  On the following day, he said that Jones gave him a ride home and attempted to give him a gun.  Kirton stated that later defendant told him he had put the gun on the roof of Kirton's apartment.  Thereafter, Kirton retrieved the gun and wrapped it with a blue and white towel in fear that the heat could cause the bullets to be fired.  Kirton testified that at that time he was not aware what the gun was used for.

On May 1, 2003, Kirton left Louisiana and went to Dallas, Texas, because he was wanted for murder.  Defendant, who was also wanted for murder, was already in Dallas at the time.  After remaining in Dallas for six or seven months, Kirton returned to Louisiana.  Kirton testified that he did not participate in the murder, nor did he know about the murder until defendant told him in Dallas that the gun was the weapon he used to murder Sanxton.

Kirton was aware that Jones had been mistakenly arrested on some distribution charges that involved the victim instead.  Defendant had told Kirton that after he was incarcerated on the drug charges, he saw a video of the drug transactions in question and one of the participants was Sanxton, not himself.

Defendant was ultimately arrested in Dallas and extradited to Louisiana.  However, before returning, defendant gave two statements to Detective Edward Klein in the Dallas-Fort Worth Airport.  Tapes of these statements were played for the jury.  In his first statement, defendant denied shooting the victim.

In defendant's second taped statement, defendant admitted that he ran into the victim, who "started with him" about the narcotics incident.  Defendant said that he had gone to get his gun because the victim had already pulled a gun on him.  Defendant said that after getting the gun, he went to pick up Kirton, who was not ready, so he went to see another friend

3

and ran into the victim.  He stated that he pulled out his gun after the victim swung a knife twice at him.  Defendant stated that he shot the gun once and turned his head.  He stated that he "blacked out" and then was at home.

(footnotes omitted) State v. Jones, 924 So.2d 1113, 1114-16 (La. App. 5th Cir. 2006); State Record Volume 3 of 4, Louisiana Fifth Circuit Court of Appeal Opinion, 05-KA-735, pp. 3-5, February 27, 2006.

Jones was tried before a jury on April 12 and 13, 2004, and was found guilty of the lesser included offense of manslaughter.[4]  The state trial court sentenced Jones on May 13, 2004, to serve 40 years in prison.[5]

Jones's counsel thereafter filed motions for appeal, for post-verdict judgment of acquittal, to reconsider the sentence and for a new trial.[6]  The motions were called for hearing on July 22, 2004 and continued to August 31, 2004 because Jones was not

---

[4]St. Rec. Vol. 1of 4, Trial Minutes, 4/12/04; Trial Minutes, 4/13/04; Jury Verdict, 4/13/04; Trial Transcript, 4/13/04.

[5]St. Rec. Vol. 1 of 4, Sentencing Minutes, 5/13/04; Sentencing Transcript, 5/13/04; St. Rec. Vol. 3 of 4, Minute Entry, 4/19/06.

[6]St. Rec. Vol. 1 of 4, Motion for Appeal, 5/21/04; Motion for Post Verdict Judgment of Acquittal, 5/21/04; Motion to Reconsider Sentence, 5/21/04; Motion for New Trial, 5/21/04; see also, Minutes of Motion Hearing, 1/9/06.

present.[7]  On August 31, 2004, the court made no ruling on the motions but entered minutes indicating that the motions had already been denied.[8]

On direct appeal, Jones's appointed counsel argued that the sentence was excessive and that the state trial court erred in denying parole eligibility.[9]  On April 26, 2005, the Louisiana Fifth Circuit Court of Appeal dismissed the appeal and remanded the matter, after finding on its error patents review that the trial court failed to rule on Jones's Motion to Reconsider Sentence filed May 21, 2004.[10]

On July 7, 2005, the state trial court held a hearing and denied the motion to reconsider the sentence.[11]  Jones's counsel appealed, arguing that the sentence was excessive and that the there was a disparity between the minute entry and the transcript regarding parole eligibility.[12]  The Louisiana Fifth Circuit affirmed the sentence on February 27, 2006, finding no merit to the excessive sentence claim.  The court, however, remanded the matter to amend the commitment and the minute entry to accurately reflect

---

[7]St. Rec. Vol. 1 of 4, Minute Entry, 7/22/04.

[8]St. Rec. Vol. 1 of 4, Minute Entry, 8/31/04.

[9]St. Rec. Vol. 1 of 4, Appeal Brief, 04-KA-1293, 11/29/04.

[10]State v. Jones, 900 So.2d 1155 (La. App. 5th Cir. 2005) (Table); St. Rec. Vol. 2 of 4, 5th Cir. Opinion, 04-KA-1293, 4/26/05.

[11]St. Rec. Vol. 2 of 4, Trial Court Order, 7/7/05.

[12]St. Rec. Vol. 2 of 4, Appeal Brief, 05-KA-725, 8/12/05.

that the sentence was imposed without a parole restriction in accordance with the transcript.[13]  The state trial court complied with the directive on April 19, 2006.[14]

Jones's conviction became final 30 days after the ruling of the Louisiana Fifth Circuit, on March 29, 2006, because he did not seek rehearing or file for timely review in the Louisiana Supreme Court.[15]  Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

On January 8, 2007, Jones submitted an application for post-conviction relief, which was filed in the state trial court on January 17, 2007.[16]  Jones argued that the state trial court erred in allowing testimony at trial regarding an unrelated gun.  On March 16, 2007, the state trial court denied relief pursuant to La. Code Crim. P. 930.4(C) because Jones had inexcusably failed to raise the claim on direct appeal.[17]

---

[13]State v. Jones, 924 So.2d 1113 (La. App. 5th Cir. 2006); St. Rec. Vol. 3 of 4, 5th Cir. Opinion, 05-KA-735, 2/27/08.

[14]St. Rec. Vol. 3 of 4, Minute Entry, 4/19/06.

[15]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

[16]St. Rec. Vol. 3 of 4, Uniform Application for Post-Conviction Relief, 1/17/07; Memorandum in Support, 1/17/07; see also, Trial Court Order, 2/13/07; State's Opposition to Application for Post Conviction Relief, 3/12/07.

[17]St. Rec. Vol. St. Rec. Vol. 3 of 4, Trial Court Order, 3/16/07.

While the application for post-conviction relief was pending, Jones filed an untimely writ application with the Louisiana Supreme Court seeking review of the Louisiana Fifth Circuit's February 27, 2006, opinion on direct appeal.[18] The court denied the application without reasons on October 26, 2007.[19]

In the meantime, the Louisiana Fifth Circuit denied Jones's post-conviction writ application on April 20, 2007, finding no error in the trial court's March 16, 2007, denial of his application for post-conviction relief.[20]   On February 22, 2007, the Louisiana Supreme Court denied without reasons Jones's subsequent writ application to that court.[21]

## II.   FEDERAL HABEAS PETITION

On April 9, 2008, Jones filed a petition for federal habeas corpus relief in this court raising two grounds for relief:[22] (1) The state trial court erred in allowing testimony at trial regarding an unrelated gun. (2) The sentence was excessive.  The State filed an opposition in response to Jones's petition, arguing that the first claim is procedurally

---

[18]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 07-KH-151, 1/25/07 (postal metered 1/18/07).

[19]State ex rel. Jones v. State, 966 So.2d 567 (La. 2007); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2007-KH-0151, 10/26/07.

[20]St. Rec. Vol. 4 of 4, 5th Cir. Order, 07-KH-267, 4/20/07.

[21]State ex rel. Jones v. State, 976 So.2d 1280 (La. 2008); St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 07-KH-1042, 5/18/07 (postal metered 5/9/07); La. S. Ct. Order, 2007-KH-1042, 2/22/08.

[22]Rec. Doc. No. 1.

barred from federal review and that Jones is not entitled to federal habeas corpus relief on the second claim.

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Jones's petition, which, for reasons discussed below, is deemed filed in this federal court on March 10, 2008.[24]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on

---

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Jones's petition was filed by the clerk of court on April 9, 2008, when the filing fee was paid.  Jones signed the petition on March 10, 2008.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if inmate did not pay the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  The State has raised the defense of procedural default on the claim that the state trial court erred in allowing testimony at trial regarding an unrelated gun.

IV.   PROCEDURAL DEFAULT

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the

merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

Jones raised his first claim concerning the admission of testimony regarding an unrelated gun in his state court application for post-conviction relief.  The state trial court denied relief because the claim should have been raised on direct appeal but was not. This procedural denial was the last reasoned decision on the issue.  Ylst, 501 U.S. at 802.

A.    INDEPENDENT AND ADEQUATE

The state trial court denied relief on Jones's evidence claim because the claim should have been raised on appeal pursuant to La. Code Crim. P. art. 930.4(c), which provides for dismissal of a post-conviction application if it raises a claim which could have been raised on direct appeal.  For the state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Glover, 128 F.3d at 902.

La. Code Crim. P. art 930.4(C) is clearly an independent state law procedural basis for denying review of an untimely raised post-conviction claim.  Bennett v. Whitley, 41

10

F.3d 1581 (5th Cir. 1994) (Article 930.4 is independent and adequate basis to federal review); Washington v. Cain, 2000 WL 863980 (E.D. La. June 27, 2000) (same).  The state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief.  Glover, 128 F.3d at 902.  The court in this case expressly ruled that Jones was not entitled to relief on this claim because it was not raised on appeal.

I find, therefore, that the bar imposed by the state trial court was both independent and adequate to bar federal review of Jones's claim in this court asserting that the trial court erred in admitting evidence of an unrelated gun.

B.   CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  Glover, 128 F.3d at 902 (citing Coleman, 501 U.S. at 731-32); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  The mere fact that

11

petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  Id. at 486.

In this case, Jones has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  My review of the record does not support a finding that any factor external to the defense prevented Jones from raising this claim in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and Jones has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Jones's claim that the trial court erred in admitting evidence of the unrelated gun is therefore procedurally barred from review by this federal habeas corpus court.  See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state

procedural rule concerning time restriction on filing for state post-conviction relief),

vacated on other grounds, 522 U.S. 87 (1998).[25]

C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

Jones may avoid this procedural bar only if a fundamental miscarriage of justice

will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing

Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage

of justice, petitioner must provide this court with evidence that would support a

"colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454

(1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual

innocence standard, petitioner must establish a fair probability that, considering all of the

evidence now available, the trier of fact would have entertained a reasonable doubt as to

the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997)

(footnote omitted); Nobles, 127 F.3d at 423 n. 33 (actual innocence factor requires a

showing by clear and convincing evidence that "but for constitutional error, no

reasonable factfinder would have found the applicant guilty of the underlying offense.")

When the petitioner has not adequately asserted his actual innocence, his procedural

default cannot be excused under the "fundamental miscarriage of justice" exception.

Glover, 128 F.3d at 903.

---

[25]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. Id.

Jones presents and the record contains nothing that suggests his actual innocence. On the contrary, the evidence of his guilt was substantial.  His claims address alleged errors in the underlying criminal proceedings and sentence and not his actual innocence. He presents no new evidence or argument of innocence that was not already presented to and resolved by the jury and the state trial court.  For these reasons, Jones has failed to overcome the procedural bar to this claim.  The claim that the state trial court erred in admitting evidence of an unrelated gun is therefore procedurally barred and must be dismissed with prejudice for that reason.

V.    MERITS REVIEW OF THE REMAINING CLAIM

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and

the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

15

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."   Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.   EXCESSIVE SENTENCE

Jones argues that his 40-year prison sentence for manslaughter is excessive because the state trial court imposed the maximum sentence without considering all available mitigating factors allowed under Louisiana law.  The Louisiana Fifth Circuit addressed this claim in Jones's second direct appeal.[26]  The court determined that the trial court properly considered the mitigation evidence presented, the family's impact testimony, the violent nature of the crime and the trial evidence before imposing the maximum sentence.  The court held that the Jones's sentence was not excessive.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  Haynes v. Butler, 825 F. 2d 921, 923-24 (5th Cir.

---

[26]State v. Jones, 924 So.2d at 1113; St. Rec. Vol. 3 of 4, La. 5th Cir. Opinion, 05-KA-735, 2/27/06.  Jones's counsel raised the claim in the original appeal, but ruling on his sentencing issues was deferred pending resolution of the outstanding motion to reconsider the sentence. St. Rec. Vol. 2 of 4, 5th Cir. Opinion, 04-KA-1293, 4/26/05.

1987); Turner v. Cain, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).  If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense.  Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983).

"[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions.  Smallwood v. Johnson, 73 F.3d 1343, 1346-47 (5th Cir. 1996);  McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).  As outlined above, the Louisiana courts made this same comparison in considering Jones's sentence.

First, Jones's sentence was within the statutory range in place in Louisiana at the time of the crime.  Louisiana law provided that a person convicted of manslaughter shall be imprisoned at hard labor for not more than forty years.  La. Rev. Stat. Ann. § 14:31 (West 2003).  In addition, at the time, a crime of violence was defined as an offense that had, as an element, the use, attempted use, or threatened use of physical force against the person of another.  La. Rev. Stat. Ann. § 14:2(13) (West 2003).  Louisiana law listed both

17

second degree murder, Jones's original charge, and manslaughter as crimes of violence. Id.

Because Jones's sentence was within the statutory parameters, the court must next consider proportionality when compared with sentences imposed in similar cases. The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" Ewing v. California, 528 U.S. 11, 23 (2003) (quoting Harmelin, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. Id., 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005). As noted above, that disproportionality is judged by whether similar sentences have been imposed for the same offense. Smallwood, 73 F.3d at 1346-47.

In this case, Jones was convicted of manslaughter on April 13, 2004. The record and the evidence, as determined by the Louisiana Fifth Circuit, established that Jones and Sanxton had a confrontation after an ongoing feud between them. After reportedly arguing for some time, Jones, using a semi-automatic weapon, shot Sanxton at least four times in the face, and the first shot killed him.[27] Witness testimony and the forensic

---

[27]St. Rec. Vol. 1 of 4, Trial Transcript, pp. 17 (stipulation as to cause of death and weapon), 29-30, 77, 4/13/04.

evidence indicated that Jones shot the gun up to seven times.[28]  Although Jones claimed

that Sanxton threatened him with a knife, Sanxton's knife was still in the waistband of

his pants when his body was located by police.[29]  In addition, Jones later admitted to

investigators that he and Sanxton had prior arguments and that he armed himself in

anticipation of the confrontation they had on the day of the murder.[30] The appellate court

resolved that these facts were sufficient to warrant imposition of the maximum sentence

under Louisiana's sentencing provision.

Under the law as it was at the time of Jones's case, Louisiana courts consistently

imposed the maximum 40-year prison sentence in similar cases of manslaughter after

ongoing violent disputes.  See e.g., State v. Johnson, 878 So.2d 869 (La. App. 2d Cir.

2004) (40 years after defendant convicted of lesser offense of manslaughter on second

degree murder charge for killing ex-girlfriend after ongoing dispute after their breakup);

State v. Williams, 875 So.2d 1043 (La. App. 3rd Cir. 2004) (40 years after defendant

convicted of manslaughter on a second degree murder charge arising from confrontation

after ongoing dispute with victim); State v. Douglas, 914 So.2d 608 (La. App. 2d Cir.

2005) (40 years after defendant plead guilty to manslaughter on second degree murder

---

[28]Id., pp. 30, 73.

[29]Id., p. 71.

[30]Id., p. 85; see State v. Jones, 924 So.2d at 1119; St. Rec. Vol. 3 of 4, La. 5th Cir. Opinion, 05-KA-735, p. 10, 2/27/06.

charge after chasing drug purchaser down for failure to pay for cocaine); State v. Bell, 854 So.2d 429 (La. App. 4th Cir. 2003) (40 years for manslaughter in killing of defendant's lover after a quarrel).

Nothing Jones has presented distinguishes his situation from the cases cited above in which the same 40-year prison sentence was imposed.  For the reasons discussed above, the state courts' finding that Jones's sentence was not excessive was not contrary to established Supreme Court case law, nor was it an unreasonable application of Supreme Court precedent.  Jones is not entitled to relief on this claim.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Darrel Jones for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  <u>Douglass v. United</u>

<u>Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __22nd__ day of October, 2008.

<u> </u>
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE